UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

MICHAEL REITER,

        Plaintiff,

v.                                      Case No.  5:05-cv-46-Oc-10GRJ

LAURIE A. BRANCH, AMY BRANCH, PAUL
BRANCH, JOSEPH G. CHIAPUSO,
BUCKEYEBRANCH, INC.,

        Defendants.
_____

## REPORT AND RECOMMENDATION[1]

Pending before the Court is Defendants' Motion To Dismiss Entire Amended Complaint Based On Lack Of Personal Jurisdiction And Improper Venue Or, In The Alternative, Motion To Dismiss Counts I, II, III, IV, and V For Failure To State A Claim Upon Which Relief Can Be Granted (Doc. 30), to which Plaintiff has filed a Memorandum Of Law In Opposition. (Doc. 57.) With the permission of the Court Defendants have filed a Reply to Plaintiff's Memorandum Of Law In Opposition To Defendants' Motion To Dismiss. (Doc. 69). Defendants' Motion to Dismiss is, therefore, ripe for review.

Also pending before the Court is Plaintiff's Motion To Join Additional Defendant And For Leave To File a Second Amended Complaint (Doc. 74) to which Defendants have filed a Response In Opposition. (Doc. 76.) Because Plaintiff's motion for leave to

_____

[1]Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

file a second amended complaint is impacted by the Court's ruling on the pending motion to dismiss, the Court will also address this motion in the Report and Recommendation.

For the reasons discussed below, Defendants' Motion To Dismiss (Doc. 30) is due to be **DENIED** with respect to Defendants' request to dismiss the complaint on the basis of personal jurisdiction and venue and with respect to Defendants' request to dismiss Plaintiff's claims for breach of fiduciary duty in count I and for defamation in count V of the complaint.  However, Defendants' Motion To Dismiss is due to be **GRANTED** with respect to Plaintiff's claims for breach of express contract in count II, breach of implied-in-fact contract in count III, and for conversion in count IV of the Amended Complaint. Lastly, Plaintiff's Motion To Join Additional Defendant And For Leave to File a Second Amended Complaint is due to be **DENIED**.

## I. BACKGROUND AND FACTS

### A. The Parties

The relevant facts, as discerned from the Complaint and supporting materials filed by the parties, reveal the following details.  Plaintiff, Michael Reiter, is a citizen of Tavares, Florida and owner of 33% of the shares in Iroquois Southeast (ISE) and 33 1/3% of the shares in Iroquois of South Carolina (ISC).[2]   Until December 2004, Plaintiff was the Managing Partner of both corporations.[3]  Defendants Laurie Branch ("L. Branch"), a New York citizen, Amy Branch ("A. Branch"), a Pennsylvania citizen, and

---

[2]Pl.'s Aff. ¶ 1; Amnd. Compl. ¶ 1.

[3]Pl. Aff. ¶4.

Joseph Greg Chiapuso ("G. Chiapuso), a New York citizen are each shareholders and directors of Buckeyebranch, Inc. ("Buckeye"), and directors and officers of ISE, and ISC.[4]  L. Branch, is the majority shareholder of Buckeye,[5] which in turn was the majority shareholder of ISE and ISC. Defendant Paul Branch ("P. Branch) is a citizen of New York and the Chairman of the Board of Directors of Buckeye, ISE, and ISC.[6]  All of the individual Defendants organized Buckeye as a holding company, which held the shares of ISE and ISC.[7]  Plaintiff held 33% of the shares of ISE and 33 1/3% of the shares of ISC. Buckeye held the remaining shares of ISE and ISC.[8]

## B.  The ISE and ISC Companies

In 1995, Plaintiff worked for Agency Market Access Corporation ("AMAC") and was approached by the President of AMAC about purchasing the assets of AMAC with Defendant L. Branch, and her brother William Branch ("W. Branch").[9]  After the sale, the Plaintiff and Defendants then formed a new entity, Iroquois Southeast ("ISE"),[10] which is a corporation organized and existing under the laws of the state of Florida.[11]  At the time of its formation, Plaintiff, W. Branch, and the named individual Defendants became the

---

[4] Amnd. Compl. ¶¶ 4, 6; L. Branch Aff. ¶¶ 6-7.

[5] Amnd. Compl. ¶ 4; L. Branch Aff. ¶ 4.

[6] Amnd. Compl. ¶ 7; L. Branch Aff. ¶¶ 4,7; P. Branch Aff. ¶ 2.

[7] *Id.* ¶ 3.  William Branch, L. Branch and A. Branch's brother, were also  shareholders and members of the Board of Directors of Buckeye.

[8] Pl. Aff. ¶ 4.

[9] *Id.* ¶ 3.

[10] *Id.*

[11] Amnd. Compl. ¶ 2.

officers and directors of ISE.[12]  In addition, Plaintiff and Defendants formed Iroquois

South Carolina ("ISC") in 1998.[13]  ISC is a corporation organized and existing under the

laws of the State of South Carolina, but with its principal place of business in Florida.[14]

ISE and ISC are part of the Iroquois Group, an umbrella corporation owned and

managed by the named Defendants which oversees a network of insurance agencies.

ISE and ISC were regional providers in that network whose business entailed matching

independent insurance agencies, or network members, with carriers "seeking business

of the type written by the agency."[15]  As Managing Partner, Plaintiff oversaw the day-to-

day functioning of ISE and ISC.  His duties included building relationships with member

companies, developing markets, recruiting potential member agencies, training, and

further developing the product line. [16]

Iroquois Group developed the standard agreements and protocols for all of the

businesses affiliated with the Iroquois Group and provided those companies with

marketing assistance, orientation services,[17] and other administrative, legal, and

accounting services. [18]  ISE and ISC entered into an agreement with Iroquois Group to

divide the gross revenue earned by ISE and ISC. The revenue was allocated by first

---

[12] Pl. Aff. ¶ 3.

[13] Amnd. Compl. ¶ 19; Pl. Aff. ¶ 12.

[14] Amnd. Compl. ¶ 3.

[15] L. Branch Aff. ¶ 2.

[16] Amnd. Compl. ¶ 20; L. Branch Aff. ¶ 13.

[17] L. Branch Aff. ¶ 15.

[18] Pl. Aff. ¶ 7; Pl.'s Mem. Of Law Ex. A at 37-44; L. Branch Aff. ¶¶ 9-10;  Pl. Aff. ¶ 14.

paying ordinary business expenses from the general revenue. Then ISE and ISC would deduct from the revenue the outstanding amount Plaintiff still owed toward the AMAC purchase price. From this remaining sum, Iroquois Group was paid 40%, for the services its was providing to ISE and ISC and then Plaintiff was paid the remaining 60% less certain agent charge backs or other adjustments.[19]

## C.  Plaintiff's Termination and Alleged Defamation

Plaintiff alleges that in May 2004 due to oppressive conduct by the defendants, who were the officers and directors of ISE and ISC - and who controlled ISE and ISC through Buckeye, the majority shareholder - he resigned his position as an Officer and Director of ISE and ISC, but sought to keep his position as Managing Partner.[20]  Plaintiff contends, however, that in order to keep his position as Managing Partner, the Defendants insisted that he remain an officer and director.[21]  As a result, Plaintiff withdrew his resignation as an officer and director.[22]  However, in November 2004, after learning that W. Branch was leaving Iroquois Group, Plaintiff again initiated discussions about a potential buy-out of his equity interest.[23]  Eventually, Plaintiff resigned his position as an officer and director of ISE and ISC as of December 15, 2004.[24]

---

[19] Amnd. Compl. ¶ 22; L. Branch Aff. ¶ 16.

[20] Amnd. Compl.  ¶¶ 27-28.

[21] *Id.* ¶ 29.

[22] *Id.*

[23] *Id.* at ¶ 32.  Plaintiff had most closely worked with W. Branch during his time at ISE and ISC.

[24] *Id.* at ¶ 35.

On December 15, 2004, all of the named individual defendants, who were the remaining officers and directors of ISE and ISC, met and voted to terminate Plaintiff's position as Managing Partner of ISE and ISC.[25]  According to Plaintiff, the Defendants refused to pay him for his equity interest or to repay his initial investment in the companies.[26]  After Plaintiff's resignation, L. Branch sent a letter to the third party member insurance agents doing business with ISE and ISC notifying them that Plaintiff had resigned, though she did not differentiate in the letter between Plaintiff's resignation as an officer and director, and his termination as Managing Partner.[27]

## II. PROCEDURAL BACKGROUND

Plaintiff initiated this action against Defendants by filing a complaint on January 11, 2005 (Doc. 1) and an Amended Complaint ("Complaint") on March 23, 2005.  (Doc. 28.)  In Count I of his Amended Complaint, Plaintiff purports to allege a claim for breach of fiduciary duty contending that Defendants utilized their majority status to wrongfully terminate him as the Managing Partner in order to deprive him of ongoing compensation for his equity in ISE and ISC. Plaintiff alleges that his injury is separate and distinct from any harm to the other shareholders because of the special duty owed to him as a minority shareholder.[28]

---

[25] *Id.* at ¶ 36.

[26] *Id.*

[27] *Id.* at ¶  37.

[28] *Id.* at ¶¶ 41-45.

In Count II, Plaintiff contends that Defendants breached an alleged express contract that he could not be terminated without cause and without advance notice.[29]  In the alternative, Plaintiff's third count of the Complaint alleges breach of an implied-in-fact contract, also asserting that Plaintiff could not be terminated without cause or without sufficient notice.  In Count IV, Plaintiff asserts a claim for conversion, alleging that Defendants have misappropriated revenue he was owed as Managing Partner and shareholder in ISE and ISC.[30]  Finally, in Count V, Plaintiff alleges defamation by false light, asserting that L. Branch's letter notifying others of his "resignation" harmed his reputation with those third parties by omitting the fact that he had not resigned his position as Managing Partner, but only as an officer and director.[31]

In their Motion To Dismiss (Doc. 30), Defendants argue that Plaintiff's Amended Complaint should be dismissed for lack of personal jurisdiction over them and because venue is improper in this district.  Alternatively, Defendants request the Court to dismiss counts I, II, III, IV and V of the Amended Complaint because Plaintiff has failed to state claims upon which relief may be granted.

In particular with regard to Count I of the Complaint, Defendants assert that Plaintiff has failed to allege any facts to support his claim that the named Defendants owed him a fiduciary duty as a minority shareholder.  With regard to Plaintiff's claim for breach of express contract Defendants argue that the claim should be dismissed

---

[29] *Id.* ¶¶ 46-52.

[30] *Id.* ¶¶ 60-63.

[31] *Id.* ¶¶ 64-69.  Plaintiff also makes a sixth claim for an accounting and a seventh claim for a receivership, but as those claims are not the subject of Defendant's Motion To Dismiss, they will not be addressed here.

because it is barred by Florida's Statute of Frauds, and that Plaintiff has failed to allege

"course of dealing, usage of trade or course of performance" that would establish the

existence of an implied-in-fact contract.  Defendants also contend that because

employment relationships under Florida law are considered employment at will, any

claim on an implied-in-fact contract would be barred by Florida's public policy against

"permanent" employment contracts.

As to Plaintiff's conversion claim, Defendants assert that this claim must fail

because Plaintiff has not identified a specific "res" or fund containing the money Plaintiff

claims he is owed.  Finally, Defendants contend that the defamation claim should be

dismissed because the letter was sent under circumstances establishing qualified

privilege and at a minimum should be dismissed as to all Defendants, other than L.

Branch because she is the only one who is alleged to have sent the letter.

### III. STANDARD OF REVIEW

In determining the propriety of granting a motion to dismiss, a court must accept

all the factual allegations in the complaint as true and evaluate the inferences derived

from the facts in the light most favorable to the plaintiff.[32]  In passing on a motion to

dismiss under Rule 12(b)(6), the Court is mindful that "[d]ismissal of a claim on the basis

of barebones pleadings is a precarious disposition with a high mortality rate."[33]  A

complaint should not be dismissed for failure to state a claim unless it appears "beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle

---

[32] *See, e.g.*, Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

[33] Int'l Erectors, Inc. v. Wilhoit Steel Erectors & Rental Serv., 400 F.2d 465, 471 (5th Cir. 1968).

him to relief."[34]   The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low.[35]

## IV.  DISCUSSION

### A.  Personal Jurisdiction

#### 1.  *The Burden of Proof and Two-part Test*

A court must address a challenge to its exercise of personal jurisdiction before looking at the other claims in a motion to dismiss.[36]  The plaintiff has the burden of initially establishing a *prima facie* case of personal jurisdiction over a nonresident defendant. "A *prima facie* case is established if the plaintiff presents sufficient evidence to defeat a motion for a directed verdict."[37]  The district court accepts the facts alleged by the plaintiff as true as long as they do not conflict with the defendant's affidavits.[38] Where the pleadings and supporting documents are in conflict, the court must construe all reasonable inferences in favor of the plaintiff.  However, the plaintiff must provide additional support for his claim of personal jurisdiction where the defendant has made a strong argument against such jurisdiction.[39]  In the instant case, Plaintiff has made the

---

[34] Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  *See also* Cook & Nichol, Inc. v. The Plimsoll Club, 451 F.2d 505, 506 (5th Cir. 1971)("[A] motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would not be entitled to recover under any state of facts which could be proved in support of his claim.").

[35] *See* Ancata v. Prison Health Servs., 769 F.2d 700, 703 (11th Cir. 1985) (citation omitted).

[36] Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990).

[37] Cable/Home Communication Corp. v. Network Prods., Inc., 902 F.2d 829, 855 (11t Cir. 1990) (quoting Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988)).

[38] *Id.*

[39] Wallack v. Worldwide Mach. Sales, Inc., 278 F. Supp. 2d 1358, 1364 (M.D. Fla. 2003).

requisite *prima facie* showing in his Complaint, and Plaintiff has offered additional support through the depositions and affidavits, filed in response to the motion to dismiss. (Doc. 57.)

In determining whether the court has personal jurisdiction over a nonresident defendant the court employs a two-part analysis.[40]   First, the court must determine if jurisdiction can be obtained over the defendants under Florida's long-arm statute. If so, the court must then decide whether the nonresident defendants have sufficient "minimum contacts" with Florida to satisfy the constitutional requirements under the Due Process Clause of the Fourteenth Amendment.[41]   Even if jurisdiction is found under Florida's long-arm statute, a separate review of the facts must be undertaken by the court to determine if the constitutional test is met.[42]

### 2. Florida's Long-Arm Statute

Because Florida law dictates the reach of the long-arm statute, this Court must interpret it in the same way that the Florida Supreme Court would.[43]   Therefore, this Court must strictly construe the statute,[44] and the burden of proving the facts which make the

---

[40] Horizon Aggressive Growth v. Rothstein-Kass, 421 F.3d 1162, 1166 (11th Cir. 2005).

[41] *Id.*

[42] Cable/Home Communication, 902 F.2d at 856 (quoting Venetian Salami Co. v. Parthenais, 554 So.2d 499, 500 (Fla. 1989)).

[43] Horizon Aggressive Growth, 421 F.3d at 1167.

[44]Madara, 916 F.2d at 1514.

long arm statute applicable to the Defendants is on the Plaintiff.[45]  Florida's long arm

statute, § 48.193(1), provides in relevant part that:

> [a]ny person, whether or not a citizen or resident of this state, who
> personally or through an agent does any of the acts enumerated in this
> subsection thereby submits himself or herself . . . to the jurisdiction of the
> courts of this state for any cause of action arising from doing any of the
> following acts:
>
> (a) Operating, conducting, engaging in, or carrying on a business or
> business venture in this state or having an office or agency in this state.
>
> (b) Committing a tortious act within this state....[46]

To meet the Florida long-arm, the Plaintiff must demonstrate that the "connexity"

requirement has been met--a higher standard from that which is required by the long-

arm statutes of most other jurisdictions.  To satisfy this requirement, "the cause of action

[must have] some [ ] connection to a specific act committed in Florida."[47]  With respect

to a cause of action in tort, "[f]or personal jurisdiction to attach under the 'tortious

activity' provision of the Florida long-arm statute, the plaintiff must demonstrate that the

nonresident defendant 'committed a substantial aspect of the alleged tort in Florida' by

establishing that the activities in Florida were essential to the success of the tort."[48]  The

---

[45] Restorative Prods., Inc. v.  Mmar Med. Group, Inc., No. 94-1920 CIV-T-17A, 1995 U.S. Dist. LEXIS 18695, at *5 (M.D. Fla. Oct. 18, 1995); Bloom v. A. H. Pond Co., Inc., 519 F. Supp. 1162, 1168 (S.D. Fla. 1981).

[46] Fla. Stat. Ann. § 48.193 (1995).

[47] Bloom, 519 F. Supp. at 1168.

[48] Cable/ Home Communication, 902 F.2d at 857 (citing Williams Elec. Co., Inc. v. Honeywell, Inc., 854 F.2d 389, 394 (11th Cir. 1988)).

tortious act does not have to take place in Florida, but "a substantial aspect" would include "'the situation in which a foreign tortious act causes injury within the forum.'"[49]

Plaintiff initially claimed that this Court had personal jurisdiction over the Defendants due to their "significant business contacts with the State and District."[50] Defendants countered that their only connections to Florida are as officers and directors of a company that does business in Florida, and that under the corporate shield doctrine established by the Florida Supreme Court in *Doe v. Thompson*[51] the activities of an individual in his corporate capacity are insufficient to confer jurisdiction over the officer or director personally.[52]

In response, Plaintiff clarifies that he is asserting personal jurisdiction under the tortious act provision of §48.193(1)(b) of the Florida Statute, alleging that Defendants committed two intentional torts: breach of fiduciary duty and defamation by false light.[53] Relying upon *Allerton v. State Dep't of Insurance*[54] and *Silver v. Levinson*[55] Plaintiff asserts that the corporate shield doctrine in *Doe* does not protect corporate officers and

---

[49] *Id.* at 857 (quoting Rebozo v. Wash. Post Co., 515 F.2d 1208,1212 (5th Cir. 1975)).

[50] Amnd. Compl. ¶ 13.

[51] 620 So.2d 1004 (Fla. 1993).

[52] In *Doe v. Thompson*, the Florida Supreme Court held that under the corporate shield doctrine "acts of [a] corporate employee performed in [his] corporate capacity do not form the basis for jurisdiction over a corporate employee in his individual capacity."   The Florida Supreme Court affirmed the rationale for the corporate shield doctrine as stated by the New Hampshire Supreme Court in *Estabrook v. Wetmore* which found that "it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer."

[53] Pl.'s Mem. Of Law at 11.

[54] 635 So.2d 36 (Fla. Dist. Ct. App. 1994).

[55] 648 So.2d 240 (Fla. Dist. Ct. App. 1995).

directors who commit intentional torts that are purposefully aimed at a Florida resident.

According to Plaintiff, if he has alleged an intentional tort against the Defendants, which

had an effect in Florida, the corporate shield doctrine under *Doe* would not insulate

them from personal jurisdiction.

Turning first to the claim for breach of fiduciary duty - one of the intentional torts

alleged by Plaintiff - there is no dispute that the named Defendants conducted business

in Florida in their corporate capacities as officers and directors of ISE, ISC, and

Buckeye.  In addition, L. Branch, A. Branch, and G. Chiapuso were the only

shareholders in Buckeye, which was the majority shareholder of ISE and ISC.

Plaintiff alleges that the Defendants breached their fiduciary duty to him as the

minority shareholder in ISE and ISC.[56]  Under Florida law breach of the duty owed by an

officer and majority shareholder of a Florida corporation to a minority shareholder is an

intentional tort.[57]  Specifically, Plaintiff alleges that the Defendants breached their

fiduciary duty by terminating his position as Managing Partner in order to force him to

---

[56] A shareholder cannot individually sue the corporation for his injuries if he "is similarly situated to other shareholders, suffers the same injury, and retains the same opportunity to be made whole by a corporate recovery from the wrongdoer."  Citibank, N.A. v. Data Lease Fin. Corp., 828 F.2d 686, 692-93 (11th Cir. 1987).  However, "a stockholder may bring suit in his own right to redress an injury sustained directly by him, and which is separate and distinct from that sustained by other stockholders." Citizens Nat'l Bank of St. Petersburg v. Peters, 175 So.2d 54, 56 (Fla. Dist. Ct. App. 1965).  In light of Plaintiff's minority status and the specific injuries he alleges he sustained, Plaintiff was not similarly situated to the other shareholder, Buckeye.  Accordingly,  Plaintiff can sue Defendants as an individual, rather than bringing a shareholder derivative suit.

[57] *See* Int'l Harvester Co. v. C. Rex Mann, 460 So.2d 580, 581-82 (Fla. Dist. Ct. App. 1984); Allerton, 635 So.2d at 39; *see also* Zold v. Zold, 880 So.2d 779, 781 (Fla. Dist. Ct. App. 2004) ("When a corporation has more than one shareholder, an officer/shareholder has a fiduciary duty to all shareholders."); Mortellite v. American Tower, L.P., 819 So.2d 928, 932, 934-35 (Fla. Dist. Ct. App. 2002) (Majority shareholder owed minority shareholder fiduciary duty to act in good faith which included informing minority shareholder about offer to sell corporation.).

sell his shares in the companies at a significantly reduced value.[58]  Plaintiff also asserts

that Defendants engaged in a series of oppressive acts leading up to his termination

which included failing to provide him with access to documents and information

regarding company tax returns, audited financial statements, and the availability of

officer/director liability insurance coverage, as well as failing to notify him of director and

shareholder meetings.[59] These actions, allegedly to benefit the Defendants, and to harm

the Plaintiff as a minority shareholder, constitute intentional conduct that could subject

the Defendants to personal liability. As a resident of Florida and the Managing Partner

for two companies based in and operating from Florida, Plaintiff has met the "connexity"

requirement under the Florida long-arm statute by demonstrating that the alleged

breach of duty caused injury to him as a shareholder in Florida.[60]

Defendants argue that all of the acts alleged by Plaintiff were committed by

them in their corporate capacities and as a result this Court cannot exert personal

jurisdiction over the them.  However, *Doe* and the other courts addressing the corporate

shield doctrine, all recognize that a corporate officer can be subject to personal

jurisdiction, notwithstanding the corporate shield doctrine where the "corporate officer

commit[s] fraud or other *intentional* misconduct."[61]

---

[58] Amnd. Compl. at 12.

[59] *Id.* at 8-9.

[60] Int'l Harvester, 460 So.2d at 581("It is well-established that the commission of a tort for purposes of establishing long-arm jurisdiction does not require physical entry into the state, but merely requires that the place of *injury* be within Florida.")

[61] Doe, 620 So.2d 1004, 1006 n.1; *see also,* Calder v. Jones, 465 U.S. 783, 790 (1984) ("Petitioners . . . status as employees does not somehow insulate them from jurisdiction. . . .In this case, petitioners are primary participants in an alleged wrongdoing intentionally directed at a California resident,
(continued…)

Florida courts have exercised personal jurisdiction over corporate officers where, as here, the claims against the corporate officers are for intentional torts and not merely for negligence in the performance of their duties as corporate officers. For example, in *Allerton*, the court upheld the exercise of personal jurisdiction by the trial court based upon the exception to the corporate shield doctrine.  There, the defendant was "not alleged to have committed acts of 'untargeted negligence,' but rather to have committed the intentional torts of fraud, conspiracy to defraud, breach of fiduciary duty, and aiding and abetting a breach of fiduciary duty."[62]  Similarly, in *Silver,* the court found that even though the defendant did not raise the corporate shield defense, it still would not defeat personal jurisdiction because the defendant committed the intentional tort of defamation.[63]

Accordingly, this Court can exercise personal jurisdiction over the Defendants individually, even though they are officers and directors of ISE and ISC, because they are alleged to have committed an intentional tort which caused injury to a resident in the State of Florida concerning the business interest of the Plaintiff in a Florida corporation.

---

[61](…continued)
and jurisdiction over them is proper on that basis."); Silver, 648 So.2d at 242; Allerton, 635 So.3d at 40 ("We do not believe that the supreme court intended in Doe to deprive a Florida plaintiff, injured by the intentional misconduct of a nonresident corporate employee expressly aimed at him, of the right to obtain personal jurisdiction over that employee in a Florida court."); Int'l Harvester Co., 460 So.2d at 581-82; Bloom, 519 F. Supp. at 1171 ("[T]he individual officers, as agents of the corporation would be personally liable to any third person they injured by virtue of their tortious activity even is such act were performed within the scope of their employment as corporate officers. . . .If the tortious corporate activity is attributable to them personally, then the acts of that corporation which constitute it as doing business in this state, are similarly attributable to the individuals for purposes of determining jurisdiction.").

[62] Allerton, 635 So.2d at 39.

[63] 648 So.2d at 242.

In addition to the intentional tort of breach of fiduciary duty, Plaintiff has alleged a claim against all of the named Defendants for the intentional tort of defamation.  Despite Defendants' assertion of qualified privilege and the truth of the statement, such defenses have no bearing upon whether this Court can exercise personal jurisdiction over Defendants in this matter.

Defendants concede that L. Branch may be subject to specific personal jurisdiction under Florida's long-arm statute,[64] but contend that because she was the only Defendant to sign and send the alleged defamatory letter, the other Defendants cannot be subject to personal jurisdiction based on the defamation claim. L. Branch also claims that if the defamation claim is sufficient to confer personal jurisdiction over her she is, nonetheless, not subject to personal jurisdiction based on any of Plaintiff's other claims.[65]

However, as discussed above, this Court has personal jurisdiction over all of the Defendants under Florida's long-arm statute because each of them is alleged to have committed the intentional tort of breach of fiduciary duty.  Further, because L. Branch is

---

[64] Defs.' Reply to Pl.'s Mem. Of Law at 5.

[65]  The Court may, however, have jurisdiction over these claims under the doctrine of pendent jurisdiction.  Under the doctrine of pendent personal jurisdiction, "a district court has the discretion to exercise personal jurisdiction over a claim that it ordinarily lacks personal jurisdiction over only when that claim arises out of the same common nucleus of operative facts as does a claim that is within the *in personam* jurisdiction power of the court." 4A James Wm. Moore et al., Moore's Federal Practice and Procedure §1069.7 (3d ed. 2005); *see also* Gill v. Three Dimension Sys., Inc., 87 F. Supp. 2d 1278, 1283-1285 (M.D. Fla. 2000).  Because all of Plaintiff's claims, including the defamation claim, arise out of the same nucleus of operative facts surrounding Plaintiff's tenure as Managing Partner of ISE and ISC, the Court may exercise pendent jurisdiction over these claims.  However, because this Court is recommending dismissal of Plaintiff's claims for breach of contract and conversion, this Court does not need to decide whether it should exercise pendent jurisdiction over these claims.

alleged to have committed the intentional tort of defamation this claim also would serve

as an independent basis for personal jurisdiction over her.

### 3. *Due Process*

Having determined that the claims against the Defendants fall under the Florida

long-arm statute, the Court must next determine whether each individual defendant has

sufficient minimum contacts with the forum to satisfy the due process requirements of

the Fourteenth Amendment of the Constitution so that the exercise of personal

jurisdiction does not offend "traditional notions of fair place and substantial justice."[66]

The Eleventh Circuit utilizes a three-part test to decide whether there are

sufficient minimum contacts:

> [f]irst, the contacts must be related to the plaintiff's cause of action . . .
> Second, the contacts must involve some act by which the defendant
> purposefully avails itself of the privilege of conducting activities within the
> forum . . . Third, the defendant's contacts with the forum must be such
> that the defendant should reasonably anticipate being haled into court
> there.[67]

Minimum contacts may support two types of personal jurisdiction, general jurisdiction

and specific jurisdiction.  Specific jurisdiction is involved where a party's contacts with

the forum relate to the cause of action.  General jurisdiction, on the other hand, is where

a party's contacts are unrelated to the litigation, but nonetheless are "continuous and

systematic," such as owning property, running a business, or maintaining a bank

---

[66] Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

[67] Posner v. Essex Ins. Co., 178 F.3d 1209, 1220 (11th Cir. 1999) (quoting Vermeulen v. Renault, U.S.A., Inc., 985 F.2d 1534, 1546 (11th Cir. 1993)).

17

account. [68]  In the instant case, the minimum contacts alleged by Plaintiff are directed to the cause of action and therefore relate to specific jurisdiction. As such the first part of the test - i.e. that the contacts are related to the cause of action - is established.

With regard to the second and third parts of the test, Defendants argue that their contacts with Florida are not such to expect that they would be haled into court here. According to Defendants, their contacts with Florida are insufficient to satisfy the requirements of due process because it would be "extremely burdensome" for them to litigate in Florida.

Plaintiff counters that because Defendants "purposefully" directed their conduct towards Florida by directing the intentional torts of breach of fiduciary duty and defamation at the Plaintiff, a Florida resident, Defendants should have reasonably anticipated being haled into court in Florida.

A number of courts have recognized that where the defendant's tortious conduct is intentionally and purposefully directed at a resident of the forum, the minimum contacts requirement is met, and the defendant should anticipate being haled into court in that forum.[69]  In this case, Plaintiff has alleged that all of the Defendants - as officers and directors of a Florida corporation - committed one or more intentional torts against Plaintiff who was injured in Florida.  Accordingly, under the three-part test enumerated above, because Defendants' contacts with Florida relate to Plaintiff's cause of action

---

[68] Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984) (citing Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 438, 445 (1952)).

[69] Calder, 465 U.S. at 790; Posner, 178 F.3d at 122; Silver, 648 So.2d 240, 243-44; Allerton, 635 So.2d at 40; Int'l Harvester Co., 460 So.2d at 581-82 ("[T]he commission of a tort within Florida by a non-resident is a sufficient "minimum contact" with Florida to justify personal jurisdiction in light of the federal constitution.") (citing Godfrey v. Neumann, 373 So.2d 920, 922 (Fla. 1979)).

and the Defendants purposefully directed their conduct toward a Florida resident, the Defendants reasonably should have anticipated being haled into court here.

However, "[e]ach defendant's contacts with the forum State must be assessed individually"[70] rather than simply viewing them collectively. Therefore, the Court must determine if the "quality and nature" of the contacts "establish sufficient contacts . . . to make it reasonable and just according to our traditional conception of fair play and substantial justice" for this Court to exercise personal jurisdiction.[71] The Court must assess the relationship of each of the Defendants to the forum and the litigation.[72] Although Defendants did not spend much time in Florida, given the "nationalization of commerce" and "modern transportation and communication," it is no longer considered a heavy burden for Defendants to defend themselves "in a State where [they] engage[ ] in economic activity,"[73] provided minimum contacts are found.[74]  The Defendants must "purposefully avail[ ] [themselves] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[75]

---

[70] Calder, 465 U.S. at 790; *see also* Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) ("Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State.").

[71] Int'l Shoe, 326 U.S. at 319-20; *see also* Shaffer v. Heitner, 422 U.S. 186, 212 ( 1977) (affirming the "standards set forth in International Shoe and its progeny" for assessing whether a court has personal jurisdiction over a defendant).

[72] Shaffer, 422 U.S. at 204.

[73] McGee v. Int'l Life Ins. Co., 355 U.S. 220, 222-23 (1957); *see also* Kulko v. Ca. Super. Ct. for S.F., 436 U.S. 84, 96-97 (1978) (commercial transactions, but not personal domestic relations are sufficient minimum contacts).

[74] Hanson v. Denckla, 357 U.S. 235, 251 (1958); *see also* Burger King, 471 U.S. at 476.

[75] Hanson, 357 U.S. at 253; *see also* Int'l Shoe Co., 326 U.S. at 319.

In determining whether a defendant could "reasonably anticipate being haled into court"[76] in the selected forum, courts also consider "the forum State's interest in adjudicating the dispute . . . the plaintiff's interest in obtaining convenient and effective relief . . . the interest of the interstate judicial system in obtaining the most efficient resolution of the controversies; and the shared interest of the several states in furthering fundamental substantive social policies."[77]  States have an interest in supplying their own citizens with a "convenient forum for redressing injuries inflicted by out-of-state actors."[78] That is because "with respect to interstate contractual obligations . . . parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities."[79]  With these principles in mind, the Court will address the contacts of each Defendant individually.

**L. Branch**

It is undisputed that L. Branch drafted, signed, and sent  the allegedly defamatory letter to third parties in Florida.[80]  In addition, L. Branch admits that she and the other principals of Iroquois Group created and incorporated ISE in Florida.[81]

---

[76] World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) (forseeability is not sufficient; "the defendant's conduct and connection with the forum" give rise to a reasonable expectation of litigating there.).

[77] *Id.* at 292 (internal citations omitted).

[78] Burger King, 471 U.S. at 473.

[79] *Id.* (internal quotations omitted).

[80] Pl.'s Mem. Of Law Ex. D at 62.

[81] L. Branch Aff. ¶ 3.

20

While L. Branch claims that her management role in ISE and ISC was indirect, from the central office of Iroquois Group in New York, she, nonetheless, oversaw operations at the national level, which included the business operations of ISE and ISC. These responsibilities included the development of standards and products for all Iroquois providers, development of protocols and criteria for member agencies, preparation and enforcement of membership agreements, execution of termination agreements of Florida agencies, and oversight of accounting functions.[82]  A majority of the communications relating to these functions transpired via e-mail.  In addition, L. Branch spoke from time to time with agencies in Florida that had questions about their compensation or contracts.  While not physically present in Florida to perform these functions, L. Branch, nonetheless, carried out and engaged in "continuous and systematic" contacts with the Plaintiff, ISE, and ISC all of which were directed at a Florida business.

Lastly, although there was no written contract between L. Branch or Iroquois Group and Plaintiff, all of the member contracts for agencies that joined ISE and ISC included a forum selection clause, designating Florida as the appropriate forum for resolving any disputes that might arise.[83] While this fact alone is not dispositive of the issue of personal jurisdiction, the fact that  L. Branch's initials appear on the stamped copies of these members agreements evidences that she knew her involvement with ISE and ISC concerned activities that were directed at Florida.

---

[82] Pl.'s Mem. Of Law Ex. D at 2-5, 9, 10, 21, 27, 29, 31-32, 33, 42, 43, 48; *Id.* Ex. A at 38-62, 67, 70, 85-87.

[83] *Id.* Ex. D at 14.

Plaintiff's cause of action for breach of fiduciary duty directly relates to L. Branch's conduct in managing these companies. Her actions with respect to the decisions that were made concerning ISE and ISC were directed towards Plaintiff, who was a Florida resident, and as such, it is not unreasonable to conclude that she should have expected she could be haled into court here.  While physical presence is not a requirement for personal jurisdiction, where continuous and systematic contacts are made by a defendant to reach out to a plaintiff in the forum state - as L. Branch is alleged to have done here - there are sufficient minimum contacts to satisfy the due process clause to establish personal jurisdiction.[84]

### P. Branch

With regard to P. Branch 's contacts with Florida, he visited Florida from time to time for personal vacations.[85] He contends that he no longer oversees day-to-day management of the Iroquois companies, but instead performs consulting services for the Iroquois Group.[86]  However, Plaintiff has alleged that P. Branch breached his fiduciary duty as a director of ISE and ISC when Plaintiff was terminated. For the reasons discussed above, P. Branch's actions as an officer and director of ISE and ISC in allegedly violating the duty owed to Plaintiff as the minority shareholder are sufficient

---

[84] Burger King, 471 U.S. at 476 ("Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable forseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communication across state lines, thus obviating the need for physical presence within a State in which business is conducted.").

[85] Pl's Mem. Of Law Ex. C at 23.

[86] Id. at 15-16, 19, 22-23, 101.

minimum contacts to satisfy the requirements of due process and subject him to the exercise of personal jurisdiction by this Court.

### G. Chiapuso and A. Branch

G. Chiapuso and A. Branch were both officers and directors of ISE and ISC.  They both also worked in some capacity for the Iroquois Group, helping to build the business in Florida.[87]  G. Chiapuso acknowledged that he had been to Florida a handful of times on business for Iroquois, although he contends that he never went to Florida to speak to Plaintiff directly about ISE or ISC.[88]  However, G. Chiapuso often met with other agencies outside of Florida about joining the Iroquois network in Florida through ISE.[89]  G. Chiapuso also testified in his deposition that he, Laurie, and Amy made management decisions that affected all of the Iroquois entities, including ISE and ISC.[90]  G. Chiapuso at times also executed  Members Agreements on behalf of ISE as the vice-president of that organization and was well aware of the Florida forum selection clause in those agreements.[91]  With regard to the alleged defamatory letter, G. Chiapuso testified that it was likely he saw the alleged defamatory letter and agreed to it before it was mailed to third parties in Florida.[92]

---

[87] L. Branch Aff. ¶11; Pl.'s Mem. Of Law Ex. D at 39, 71-72; *Id.* Ex. B at 42-43.

[88] Pl.'s Mem. Of Law Ex. B, at 70-72.

[89] *Id.* at 69.

[90] *Id.* at 81-83, 92, 96.

[91] *Id.* at 89-91.

[92] *Id.* at 93-94.

In sum, through their roles as officers and directors of ISE and ISC, G. Chiapuso and A. Branch had business contacts with Florida customers on behalf of the Iroquois Group, and through their alleged tortious conduct, Defendants A. Branch and G. Chiapuso directed their activities towards this forum, and so should reasonably anticipate being haled into court here.

Other than arguing generally that defending a lawsuit in Florida is "extremely burdensome," Defendants have failed to provide any additional information to support this claim.  Accordingly, because the tortious conduct of Defendants challenged by Plaintiff was purposefully directed toward a Florida Plaintiff, coupled with the systematic and continuous contacts Defendants had with ISE, a Florida corporation,[93] this Court finds that exercising personal jurisdiction over the Defendants does not violate due process and, therefore,  Defendants' Motion To Dismiss For Lack of Personal Jurisdiction is due to be **DENIED.**

## B.  Improper Venue

Defendants contend that venue in the Middle District of Florida is improper because none of the Defendants reside in Florida and none of the alleged wrongs were committed in Florida.  Under 28 U.S.C. §1391(a),

> [A] civil action wherein jurisdiction is founded only on diversity of citizenship may . . . be brought only in (1) a judicial district where any defendant resides, if all ... reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that

---

[93] Where the actions of management are the issue of the litigation (albeit in the context of  a shareholder derivative suit) the Supreme Court has found that "the chartering State has an unusually powerful interest in insuring the availability of a convenient forum for litigating claims involving a possible multiplicity of defendant fiduciaries and for vindicating the State's substantive policies regarding the management of its domestic corporations." Shaffer, 433 U.S. at 222-23 (Brennan, J., concurring in part, dissenting in part).

is subject to the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Plaintiff is a citizen of Tavares, Florida which is located in the Middle District of Florida. Plaintiff carried out his responsibilities as the Managing Partner of ISE and ISC in Florida, and alleges that the injuries he suffered due to Defendants' alleged breach of fiduciary duty and defamation occurred here.   While, Defendants may have physically met outside the state of Florida in making the decisions directed toward Plaintiff that he contends violated Defendants' fiduciary duty, the result of those actions occurred in Florida. Accordingly,  under 28 U.S.C. §1391(a)(2), venue is proper in the Middle District because "a substantial part of the events or omissions giving rise to the claim occurred" here.   Defendants' Motion To Dismiss For Improper Venue is, therefore, due to be **DENIED**.

**C.  Motion To Dismiss For Failure To State A Cause of Action**

      *1. Breach of Fiduciary Duty*

The *Restatement of Torts* defines a violation of fiduciary duty as occurring when "[o]ne standing in a fiduciary relation with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation."[94]  As discussed in detail above Plaintiff has alleged sufficient facts in the Amended Complaint detailing how the Defendants, as officers and directors and as majority shareholders, through Buckeye,

---

[94] Restatement (Second) of Torts § 874 (1979).

breached their duty towards Plaintiff as the minority shareholder.[95] While Defendants argue that these allegations amount to nothing more than a claim for wrongful termination or ordinary negligence, Plaintiff has alleged more. In particular Plaintiff alleges that Defendants terminated him as Managing Partner for the purpose of depriving him of ongoing compensation for his equity in ISE and ISC. The duty that Plaintiff alleges was violated by Defendants was the duty they owed to him in their capacity as directors/officers, who controlled ISE and ISC through Buckeye's majority ownership. Florida law recognizes a cause of action for breach of fiduciary duty by a director and controlling shareholder in situations such as this where the actions of the directors are taken to benefit them, individually and to harm the minority shareholder.[96]

Accordingly, under the liberal notice pleading standards of Rule 8 of the Federal Rules of Civil Procedure, Plaintiff has stated a claim for breach of fiduciary duty and, therefore, Defendants' Motion To Dismiss count I of the Amended Complaint is due to be **DENIED**.

### *2.* Counts II and III - Breach of Express Contract or Implied-in-Fact Contract

Plaintiff alleges in the Amended Complaint that he had an express contract, or in the alternative, an implied-in-fact contract with the Defendants to render services on an ongoing basis as an independent contractor in the position of Managing Partner.  He claims that it was the parties' understanding under either contract that he could only be terminated for cause or in the event he gave up his equity interest in ISE and ISC.

---

[95]  Amnd. Compl. at 8-9.

[96]  *See, e.g.* Mortellite v. American Tower, L.P., 819 So. 2d 928, 932 (Fla. Dist. Ct. App. 2002); Biltmore Motor Corp. v. Roque, 291 So. 2d 114, 116 (Fla. Dist. Ct. App.).

According to Plaintiff, any such termination would require sufficient, advance notice. Plaintiff contends that Defendants breached their contractual obligations to him by terminating him without cause and by refusing to pay him his share of the revenue from ISE and ISC.[97]

Defendants argue that Plaintiff's claim for breach of an express contract is barred by the Florida Statute of Frauds because any agreement between Defendants and Plaintiff for his services was intended to be performed over the course of more than one year.  Defendants also assert that because an implied-in-fact contract can only arise out of the course of dealing between the parties, not from their verbal or written communications, Plaintiff has failed to show any course of dealing that establishes the terms which were the basis of the understanding of the contract.  In addition, Defendants claim Florida adheres to the doctrine of employment at will which disfavors suits for wrongful termination of a "permanent" employment contract.

The Statute of Frauds is an affirmative defense which normally would not be considered on a motion to dismiss because it falls outside of the four corners of the complaint.  However, both parties have pled sufficient facts to allow this Court to find the intent of the parties with respect to the time frame for this agreement.

Plaintiff argues that where no time frame is established, the contract does not fall within the Statute of Frauds.  However, in the Amended Complaint, Plaintiff alleges that he personally contributed $235,000 to the purchase of AMAC which became the basis for ISE.  As evidenced by the allegations in the Amended Complaint, Defendants were

---

[97] Amnd. Compl. at 13-15.

responsible for paying the remainder of the approximate $390,000 purchase price. Plaintiff alleges, however, that he initially contributed only $1000 in 1996, and paid the balance of $234,000 over the course of the next *six* years, through August of 2002.[98]

The *Restatement (Second) of Contracts*, provides that "[c]ontracts of uncertain duration are simply excluded [from the Statute of Frauds]; the provision applies only to those contracts whose performance cannot possibly be completed within a year."[99]  The Supreme Court of Florida has followed this general rule, but qualified it with the following:

> [W]hen no time is agreed on for the complete performance of the contract, if from the object to be accomplished by it and the surrounding circumstances, it clearly appears that the parties intended that it should extend for a longer period than a year, it is within the statue of frauds, though it cannot be said that there is any impossibility preventing its performance within a year.[100]

Plaintiff paid a *de minimis* amount in the first year (1996), and agreed that his remaining contribution would be paid from his share of the revenue of ISE and ISC.[101]  Because it took six years for Plaintiff to fully pay off his contribution, at the time the agreement was finalized to split the revenue of ISE and ISC between Iroquois Group and Plaintiff, it is evident that the parties contemplated a relationship that would exceed one year. Because the alleged agreement between the parties contemplated performance lasting for more than one year under the Statute of Frauds the contract was required to be in writing to be enforceable.  Accordingly, Defendants' Motion To Dismiss Plaintiff's claim

---

[98]  Amnd. Compl. ¶ 16.

[99] Restatement (Second) of Contract § 130 (1981).

[100] Yates v. Ball, 181 So. 341, 345 (Fla. 1937).

[101]  Amnd. Compl. ¶ 22.

for breach of express contract in count II of the Amended Complaint is due to be

**GRANTED** because it is barred by the Statue of Frauds.

As to Plaintiff's claim of the existence of an implied-in-fact contract, "under

Florida law, a contract implied-in-fact 'is one form of an enforceable contract; it is based

on a tacit promise, one that is inferred in whole or in part from the parties' conduct, not

solely from their words."[102]   Plaintiff alleges in his Amended Complaint that even if there

was not an express contract, he had an implied-in-fact contract with Defendants for the

same terms.[103]

Implied-in-fact contracts can arise where one "performs services at another's

request."[104] However, implied-in-fact contracts do not arise where there is an

employment at will relationship.[105] Implied-in-fact contracts will never embody the

"implied release of the employer's full authority to manage his own business, and, if he

subsequently decides so to do, [the employer may] discharge the employee, with or

without fault on the employee's part."[106]   Lifetime employment contracts are only

enforced where the contract has definite terms exhibiting the intent of the parties, the

contract includes provisions to enforce the contract, and the employee has given

---

[102] Ship Constr. and Funding Servs v. Star Cruises, 135 Fed. Appx. 218, 220 (2005) (quoting Commerce P'ship v. Equity Contracting Co., Inc. 695 So.2d 383, 385-86 (Fla. Dist. Ct. Ap. 1997) (en banc)).

[103] Amnd. Compl. at 14-15.

[104] Gem Broad., Inc. v. Minker, 763 So.2d 1149, 1151 (Fla. Dist. Ct. App. 2000).

[105] Under Florida law, "where the term of employment is discretionary with either party or *indefinite*, then either party for any reason may terminate it at any time and no action may be maintained for breach of employment contract." DeMarco v. Publix Super Markets, Inc., 360 So.2d 134, 136 (Fla. Dist. Ct. App. 1978), *aff'd*, 384 So.2d 1253 (Fla. 1980) (emphasis added).

[106] Richardson v. Permacel Tape Corp., 244 F.2d 80, 83 (5th Cir. 1957).

additional consideration to the employer.[107]  Plaintiff has failed to allege any facts that

would support an explicit lifetime contract.  As Managing Partner of ISE and ISC,

Plaintiff was subject to an employment at will relationship and, therefore, could be

terminated without cause at anytime.  Accordingly, Defendants' Motion To Dismiss

Count III of Plaintiff's Complaint for breach of an implied-in-fact contract is also due to

be **GRANTED**.

### 3. *Count IV - Conversion*

Plaintiff alleges that since his termination, Defendants have wrongfully converted

his share of ongoing revenue.  Defendants contend that Plaintiff is merely attempting to

enforce a claim for payment of monies owed, and that his conversion claim should fail

because Plaintiff has not identified a specific source of funds that has been

misappropriated.[108]

Under Florida law, "[c]onversion is an unauthorized act which deprives another of

his property permanently or for an indefinite time. . . . The essence of the tort is not the

acquisition of the property; rather it is the wrongful deprivation."[109]  Money can be

considered converted property, but while it "need not be earmarked, [ ] there must be an

obligation to keep intact or deliver the specific money in question, so that such money

---

[107] Heston Corp. v. Roche, 599 So.2d 148, 151 (Fla. Dist. Ct. App. 1992).

[108] Defs.' Mot. To Dismiss at 17; Defs.' Reply to Pl.'s Mem. Of Law at 11.

[109] Nat'l Union Fire Ins. Co. of Pa. v. Carib Aviation, Inc., 759 F.2d 873, 878 (11th Cir. 1985) (quoting Senfeld v. Bank of Nova Scotia Trust Co. (Cayman), 450 So.2d 1157, 1160-61 (Fla. Dist. Ct. App. 1984) (citing Star Fruit Co. v. Eagle Lake Growers, Inc., 33 So.2d 858 (Fla. 1948))).

can be identified."[110]  A "specific fund" must be identified for an action for conversion to

be sustained where it appears that the action is only for the payment of money that

arises out of a contractual relationship.[111]

      While there is no written contract between the Defendants and Plaintiff, there

was an agreement specifying how the revenue of ISE and ISC would be divided

between the Plaintiff and Iroquois Group.  As discussed above, first, ordinary business

expenses were paid from the general revenue of the companies.  Next, Plaintiff's

installment payment of the purchase price of AMAC was deducted, and then Iroquois

Group took 40% of the revenue.  Plaintiff received the remainder less agent charge

backs or other adjustments.[112]  Plaintiff is seeking to recover the additional revenue

payments he contends he is owed. However, there are no allegations in the Amended

Complaint suggesting that the revenue was ever set aside in an account or in a form

that designated it as Plaintiff's share.  It is well settled that a conversion claim does not

lie where Plaintiff merely asserts that Defendants are obligated to pay him money owed

to him under their agreement.[113] In addition, Plaintiff has not alleged any specific sum of

money owed that suggests that a specific fund of money exists.

---

[110] Belford Trucking Co. v. Zagar, 243 So.2d 646, 648 (Fla. Dist. Ct. App. 1971).

[111] Bel-Bel Int'l Corp. v. Cmty. Bank of Homestead, 162 F.3d 1101, 1109 (11th Cir. 1998) ("The specific fund requirement is an exception to the general rule that an obligation to pay money cannot be enforced through an action for conversion.")

[112] Amnd. Compl.  ¶ 22.

[113] Kee v. Nat'l Reserve Life Ins., 918 F.2d 1538, 1541 (11th Cir. 1990).

Plaintiff contends that it is not necessary to identify a specific fund. Relying upon *Special Purpose Accounts Receivable Co-op Corp. v. Prime One Capital Co.*[114] and *Bel-Bel International Corp.v. Community Bank of Homestead*,[115] Plaintiff asserts that where there is "a mechanism [ ] to identify and trace the funds that allegedly were converted by defendants" a specific fund and specific amount do not need to be identified up front for a conversion claim to be sustained.

Plaintiff's reliance upon *Special Purpose Accounts* and *Bel-Bel* is misplaced and the facts, there, are distinguishable from the instant case.  In *Special Purpose,* the plaintiff could identify the specific vehicle leases in which he held a security interest and from which he would be owed specific lease amounts, depending on the amount of the monthly lease and the number of months the defendants held the vehicles.  The plaintiff had a list of the specific vehicles and their account and lease numbers, making the lease proceeds on these specific vehicles themselves the identifiable fund.[116]  In *Bel-Bel*, the debtors pledged the accounts receivable of an identified tomato crop as collateral for a note. Although the accounts receivable had been distributed to several parties, it was fairly simple to trace which disbursements were linked to sales of the identified tomato crop.[117]

In the instant case, unlike the plaintiffs in *Special Purpose Accounts* and *Bel-Bel,* Plaintiff's "share" of general revenue from ISE and ISC is not an easily identifiable or

---

[114] 125 F. Supp. 2d 1093 (S.D. Fla. 2000).

[115] 162 F.3d 1101.

[116] 125 F. Supp. 2d 1100.

[117] *Id.* at 1100-01 (discussing the result in <u>Bel-Bel Int'l</u>).

32

calculable amount because it is not derived from a separate fund like a listing of vehicle leases, a tomato crop, money held in "trust,"[118] or money held in a sealed envelope, or in a deposit bag.[119]  Accordingly, because Plaintiff has failed to allege a  specific fund that is the subject of the claim for conversion, Defendants' Motion to Dismiss count IV of the Amended Complaint is also due to be **GRANTED**.

### 3. Count V - Defamation

In count V of the Amended Complaint, Plaintiff alleges that after terminating Plaintiff's employment, Defendants sent a defamatory letter to third parties in Florida who did business with ISE and ISC representing that Plaintiff had resigned all of his positions at ISE and ISC, including his position as Managing Director.  Plaintiff contends that such representations damaged his reputation in the community.[120]

Defendants contend that Plaintiff has failed to state a claim for defamation because the alleged defamatory statements were true and Defendants sent the letter under the cloak of a qualified privilege to make such statements.  Plaintiff counters that he has properly alleged a claim for defamation and that qualified privilege and truth are affirmative defenses that should not be considered on a motion to dismiss.

To state a cause of action for defamation a private person must allege publication (1) of false and defamatory statements of and concerning a private person, (2) without reasonable care as to the truth or falsity of those statements, and  (3)

---

[118] <u>Kee</u>, 918 F.2d at 1541.

[119] <u>Belford</u>, 243 So.2d at 648.

[120] Amnd. Compl. ¶¶ 65-69.

resulting in actual damage to that private person.[121]  Plaintiff has sufficiently pled each of these elements of defamation in his Amended Complaint. Indeed, Defendants concede at a minimum, that  L. Branch drafted the letter and mailed it to third parties in Florida.[122]

Defendants argue that Plaintiff has failed to state a claim for defamation because Plaintiff admits in his Amended Complaint that he had resigned his position as an officer and director of ISE and ISC and therefore the statement in the letter confirming his resignation is true, and not defamatory. The defamation alleged by Plaintiff, however, is not that Defendants told ISE and ISC member agencies that Plaintiff had resigned but that the letter failed to mention the reasons for Plaintiff's departure and that Plaintiff's departure as the Managing Partner was without warning or notice. Plaintiff contends that because this information was intentionally omitted from the letter, the letter conveyed the impression that Plaintiff had left ISE and ISC in an unprofessional and unreliable manner thus damaging his ability to continue to do business with these third parties.  While Plaintiff's theory of defamation may be extremely "thin," at this stage of the proceedings on a motion to dismiss, it cannot be said that Plaintiff has failed to state any claim for defamation, particularly in view of the fact that defamation may occur by omission.[123] Moreover, under Florida law truth "is only a defense to defamation when

---

[121] Hay v. Indep. Newspapers, Inc., 450 So.2d 293, 294 (Fla. Dist. Ct. App.  1984); *see also,* Restatement (Second) of Torts § 558 (1977).

[122] Defs.' Reply to Pl.'s Mem. Of Law at 4.

[123] Restatement (Second) of Torts § 565 ("To be defamatory . . . it is not necessary that the accusation or other statement be by words.  It is enough that the communication is reasonably capable of being understood as charging something defamatory.")

the truth has been coupled with good motive."[124] Whether that is the case is an issue

that cannot be determined from examining the "bare-bones" of the Amended Complaint.

Additionally, Defendants argue that the defamation claim should be dismissed

because the Defendants sent the letter under a qualified privilege.  A qualified privilege

may attach to Defendants' statement if the statement was made "(1) in good faith; (2)

[with] an interest in the subject . . . or a duty to speak; (3) [with] a corresponding interest

or duty in the listener or reader; (4) [on] a proper occasion; and (5) publi[shed] in a

proper manner."[125] However, qualified privilege is an affirmative defense and as such

generally should not be considered on a motion to dismiss, unless "the facts giving

application to the defense are clearly apparent on the face of the complaint."[126]  While

the determination of whether a statement is privileged is a question of law properly

decided by a court the Court can only make that determination "if the circumstances

surrounding the communication are *undisputed or so clear under the evidence as to be*

*unquestionable.*"[127]

At this stage of the proceedings, based solely upon the allegations in the

Amended Complaint, the Court cannot determine whether the circumstances

surrounding the transmittal of the letter by Defendants was protected by the qualified

---

[124] *See,* LRX, Inc. V. Horizon Associates Joint Venture, 842 So. 2d 881, 886-87 (Fla. Dist. Ct. App. 2003).

[125] Thomas v. Tampa Bay Downs, Inc., 761 So.2d 401, 404 (Fla. Dist. Ct. App. 2000).

[126] Fariello v. Gavin, 873 So.2d 1243, 1245 (Fla. Dist. Ct. App. 2004).

[127] *Id.* (emphasis added).

privilege.  Accordingly, Defendants' Motion to Dismiss Count V of the Amended Complaint is due to be **DENIED.**

### D.  Motion For Leave To Join Additional Defendant And File Amended Complaint

Also pending before the Court is Plaintiff's Motion To Join Additional Defendant And For Leave To File A Second Amended Complaint. (Doc. 74.)  Plaintiff requests permission to file a second amended complaint so that he can join Iroquois Group as an additional defendant in this case. Defendants oppose Plaintiff's request arguing that Plaintiff should not be allowed to join Iroquois Group as a defendant because Plaintiff has missed the deadline to do so.  Additionally, Defendants assert that Plaintiff has failed to properly allege any claims against Iroquois Group in the Second Amended Complaint.[128]

In the proposed Second Amended Complaint, Plaintiff alleges claims for breach of express contract, breach of implied contract, and conversion against Iroquois Group.[129]  Because this Court is recommending dismissal of Plaintiff's breach of contract and conversion claims, it would be futile for Plaintiff to file a further amended complaint attempting to allege these same claims against Iroquois Group. Accordingly, Plaintiff's Motion To Join Additional Defendant And For Leave To File A Second Amended Complaint (Doc. 74) is due to be **DENIED.**

---

[128] *See* Defs.' Response In Opposition to Pl.'s Mot. To Join Add'l Def.

[129] Second Amnd. Compl. at 15-18.

## VI. <u>RECOMMENDATION</u>

In view of the foregoing, it is respectfully **RECOMMENDED** that Defendants'

Motion To Dismiss (Doc. 30) be **DENIED** with respect to Defendants' request to dismiss

the amended complaint on the basis of personal jurisdiction and venue and with respect

to Defendants' request to dismiss Plaintiff's claims for breach of fiduciary duty in count I

and for defamation in count V of the Amended Complaint. However, it is further

**RECOMMENDED**  that Defendants' Motion To Dismiss be **GRANTED** with respect to

Count II (breach of express contract), Count III (breach of implied-in-fact contract), and

Count IV (conversion).  Finally, it is **RECOMMENDED** that Plaintiff's Motion To Join

Additional Defendant And For Leave To File A Second Amended Complaint (Doc. 74)

be **DENIED**.

**IN CHAMBERS** in Ocala, Florida, on November 9, 2005.

GARY R. JONES
United States Magistrate Judge

Copies to:
  The Honorable Wm. Terrell Hodges
  Senior United States District Judge

  Counsel of Record